Christopher J. Reichman  SBN 250485
Justin Prato SBN 246968
PRATO & REICHMAN, APC
3675 Ruffin Road, Suite 220
San Diego, CA 92123
Telephone: 619-683-7971
chrisr@prato-reichman.com
justinp@prato-reichman.com

Attorneys for Class and Named Plaintiff
PAUL SAPAN

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL SAPAN, and STEVE WATERBURY, individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>vs.<br><br>E MORTGAGE CAPITAL, INC., a California Corporation, and JOSEPH NAGIB SHALABY, an individual,<br><br>        Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**Violation(s) of Telephone Consumer Protection Act of 1991**<br><br>**Jury Trial Demanded** |

        Plaintiff PAUL SAPAN ("Plaintiff"), individually and on behalf of the Class described below, by their attorneys, make the following allegations based upon information and belief, except as to allegations specifically pertaining to Plaintiffs and their counsel, which are based on personal knowledge.  Plaintiffs bring this

action for injunctive relief and damages against Defendant, and each of them, demanding a trial by jury.

## JURISDICTIONAL ALLEGATIONS

1.     Plaintiff PAUL SAPAN ("Mr. Sapan") is, and at all times herein mentioned, was a resident of the County of Orange, State of California.

2.     Plaintiff STEVE WATERBURY ("Mr. Waterbury") is, and at all times herein mentioned, was a resident of the County of San Diego, State of California.

3.     Defendant E MORTGAGE CAPITAL, INC. (California Department of Real Estate License 01704228) ("E Mortgage") is, and at all times herein mentioned was, a corporation, doing business in the Counties of Orange and San Diego, State of California.

4.     Defendant JOSEPH NAGIB SHALABY ("Mr. Shalaby") is, and at all times herein mentioned was, an individual person doing business in the Counties of Orange and San Diego, State of California.

5.     This case is filed pursuant to the Telephone Consumer Protection Act of 1991, 47 U.S.C. §227 et. seq. ("TCPA").  The U.S. Supreme Court recently decided that federals courts have federal question subject matter jurisdiction over such civil actions under 28 U.S.C. §§ 1331 and 1441.  *Mims v. Arrow Fin. Services, LLC*, -- U.S. --, 132 S.Ct. 740, 753 (2012).

6.     At all times herein mentioned each defendant was the partner, agent and employee of each co-defendant herein and was at all times acting within the scope of such partnership, agency and employment and each defendant ratified the conduct of each co-defendant herein.

7.     At all times herein mentioned each employee, representative, officer, director, or consultant of any defendant was acting as its agent.

## NATURE OF THE ACTION

8.      Plaintiffs bring this class action against Defendants E Mortgage and Mr. Shalaby (herein collectively, "Defendants") for injunctive relief and damages and all other relief available at law and in equity on behalf of themselves and members of the following two sub-class of persons:

Sub-Class 1:

*All persons and entities located within the United States of America who claim to be able to provide a phone bill or statement showing they were a residential telephone subscriber and that their number was registered on the National Do-Not-Call Registry to whose residential telephone Defendants and/or their agents transmitted two or more telemarketing calls in one calendar year without prior express written consent from the called party or an 'existing business relationship' at any time from December 29, 2020 to the present, including up to and through trial, and*

Sub-Class No. 2:

*All persons and entities located within the United States of America who claim to be able to provide a phone bill or statement showing they had had a phone number subscribed to a residential tariff and who claim Defendants and/or their agents transmitted a call to sell financial services using a prerecorded voice to said number without prior express written consent from the called party at any time from December 29, 2020 to the present, including up to and through trial; and,*

9.      The TCPA was passed in order to regulate telemarketing by prohibiting, *inter alia*:

a)  telemarketing calls to numbers on the federal Do Not Call Registry run by the Federal Trade Commission (47 U.S.C. § 227(b)(1)(B)) ; and

b)  prerecorded calls to residential lines in the absence of prior express written consent obtained from the target before making the calls.  (47 U.S.C. § 227(c), 47 C.F.R. § 64.1200(c)).

10.     Prerecorded telemarketing calls to residential lines violate TCPA subsection (b).

11.     Any call, whether live or prerecorded, to numbers on the Do Not Call Registry violate TCPA subsection (c).

12.     And a prerecorded telemarketing call may independently violate both subsections if placed to a number on the Do Not Call Registry.  See, 47 U.S.C. 227(b)(3) & (b)(5) (subsection (b) granting a private right of action and relief for "violation of this subsection" and subsection (c) for "a violation of the regulations prescribed under this subsection").

13.     E Mortgage is engaged in a scheme to sell mortgage consultation services and/or mortgage services via cold calls using prerecorded voice telemarketing or live telemarketing to residential phone numbers on the protected federal Do Not Call Registry, which E Mortgage calls without prior express written consent.

14.     Thus, E Mortgage is engaging in making illegal telemarketing calls prohibited by the TCPA, which gives victims of junk calls a private right of action to sue for the intrusion on their privacy.

15.     The modus operandi is the same for all the calls in this case, E Mortgage, either directly or through the use on an agent at the direction of E Mortgage calls various numbers in the United States with prerecorded voice software or live agents to sell E Mortgage's financial services.

Complaint

16.     E Mortgage and/or its agent do not check the federal Do Not Call Registry before making these calls nor engage in any Do Not Call Registry compliance.

17.     If a person, such as the Plaintiff, answers a prerecorded call they will hear a robotic prerecorded artificial voice which will make a quick sales pitch and prompt them to "press 1" to continue.

18.     If the person presses 1 to continue, they will be connected during the call with a live agent who will continue the E Mortgage sales pitch.

19.     Plaintiff alleges on information and belief that E Mortgage is aware of the use of a robotic prerecorded artificial voice as it is either making such calls directly or directing an agent to use such methods for telemarketing.

20.     Alternatively, Plaintiff alleges on information and belief E Mortgage is willfully ignorant of the use of a robotic prerecorded artificial voice in the calls.

21.     If a person, such as the Plaintiff, answers a live telemarketing call a representative comes on the line to either make a direct E Mortgage sales pitch or the representative is a third-party agent for E Mortgage who will ask one or two qualifying questions and then connect in a direct E Mortgage representative who will then make the sales pitch.

22.     Plaintiff alleges on information and belief that E Mortgage is aware of the use of a live telemarketing calls as it is either making such calls directly or directing an agent to do such telemarketing.

23.     Alternatively, Plaintiff alleges on information and belief E Mortgage is willfully ignorant of the use of live telemarketing calls.

24.     These cold calls are made to massive lists of phone numbers in the United States with no regard for whether these numbers have been registered on the National Do Not Call Registry or not.

25.     E Mortgage has intentionally violated the TCPA in a so-far successful attempt to sell financial and/or mortgage packages for years.

## FACTUAL DETAILS RE NAMED PLAINTIFF PAUL SAPAN

26.    In a prior action, Mr. Sapan alleged Defendants made ninety (90) telemarketing calls to his residential number which was properly listed on the Do Not Call Registry.  *Sapan v. E Mortgage Capital, et. al.*, CACD Case No. 8:20-cv-00880 DOC (DFMx).

27.    Mr. Sapan and Defendants were able to resolve their differences in that dispute by written agreement effective December 20, 2020.  (Please note this is prior to the time set in the class definition).

28.    Defendants were unquestionably on notice by that date at least that Mr. Sapan had complained of numerous TCPA violations.

29.    Defendants foolishly continued to call Mr. Sapan's after reaching this agreement.

30.    Defendants made twenty-six (26) live calls to PAUL SAPAN's home phone number (310-444-1999) wherein they tried to pitch their financial services on the following dates and times and using the following Caller ID ("CID") numbers and Caller ID name ("CNAM"):

- 12/29/20 1015am, CID 619-496-3869, CNAM [none].
- 1/15/21 104pm, CID 818-789-7755, CNAM [none].
- 1/18/21 900am, CID 818-789-7755, CNAM [none].
- 1/19/21 312pm, CID 818-789-7755, CNAM [none].
- 3/17/21 1126am, CID 818-789-7755, CNAM [none].
- 4/13/21 627pm, CID 951-833-8971, CNAM [none].
- 4/13/21 627pm, CID 951-833-8971, CNAM [none].
- 4/14/21 1208pm, CID 310-699-6676, CNAM [none].
- 8/26/21 226pm, CID 413-389-1385, CNAM [none].
- 8/26/21 232pm, CID 310-596-0221, CNAM ("Derek Robertson").
- 10/20/21 1213pm, CID 3107049044, CNAM [none].
- 1/14/22 318pm, CID 341-234-8028, CNAM [none].

- 6 -

Complaint

- 1/14/22 320pm, CID 341-234-8028, CNAM [none].
- 1/26/22 1044am, CID 341-234-8028, CNAM [none].
- 1/26/22 1053am, CID 341-234-8028, CNAM [none].
- 1/26/22 1056am, CID 341-234-8028, CNAM [none].
- 1/26/22 1057am, CID 341-234-8028, CNAM [none].
- 1/26/22 1057am, CID 341-234-8028, CNAM [none].
- 1/26/22 1058am, CID 341-234-8028, CNAM [none].
- 1/26/22 1059am, CID 341-234-8028, CNAM [none].
- 1/26/22 1105am, CID 341-234-8028, CNAM [none].
- 2/10/22 957am, CID 949-694-9270, CNAM [none].
- 2/10/22 1005am, CID 714-717-0200, CNAM [none].
- 2/10/22 1007am, CID 714-717-0200, CNAM [none].
- 2/14/22 120pm, CID 714-717-0200, CNAM [none].
- 2/14/22 121pm,  CID 714-717-0200, CNAM [none].

31.     Mr. Sapan made a log of all the calls he received from E Mortgage which is attached hereto as Exhibit 1 and incorporated herein as if set forth verbatim.

32.     Mr. Sapan's call log entries were made during or shortly after receiving the calls and includes the date and time of the call, the Caller ID information, and his notes as to what transpired during the call.

33.     Mr. Sapan's residential line has been tariffed and used as a residential line since he was assigned it by the phone company.

34.     Mr. Sapan's residential line has been continuously registered on the National "Do-Not-Call" Registry from at least December 22, 2007 to the present.

35.     Mr. Sapan never gave any E Mortgage or any other person, agent, employee or entity associated with E Mortgage express written permission to call him, nor does he have an established business relationship nor personal

Complaint

relationship with E Mortgage or any other person, agent, employee or entity associated with E Mortgage.

36. As shown in Exhibit 1, representatives of E Mortgage regularly stated their corporate affiliation with E Mortgage in the calls Mr. Sapan answered.

37. In each of the calls Mr. Sapan did not answer with one set of exceptions below, the call was made using the exact same CID number as at least one of the calls Mr. Sapan did answer and wherein representatives of E Mortgage stated their corporate affiliation with E Mortgage.

38. The exception is the calls made in January and March of 2021 using CID 818-789-7755, and this exact CID was used to make calls on behalf of E Mortgage in Mr. Sapan's prior case against E Mortgage and as with all the other calls here, a representatives of E Mortgage stated their corporate affiliation with E Mortgage during at least one of those calls from the same CID number. *Sapan v. E Mortgage Capital, et. al*., CACD Case No. 8:20-cv-00880 DOC (DFMx), Dckt. No. 1-1 (Complaint Ex. 1, calls dated 12/11/19 through 1/15/20).

39. To the extent that there are other company names used by some calling agents before connecting the call with a direct E Mortgage representative, Mr. Sapan alleges that these people are agents of E Mortgage.

40. For example, on August 26, 2021 at approximately 2:26pm Mr. Sapan received a call from someone who identified himself as "Mark with American Financial" selling lower mortgage refinancing.

41. Since "American Financial" sounds generic and made up and Mr. Sapan knows from extensive experience that junk telemarketers constantly use vague and generic faked company names to introduce their pitches in order to evade detection and liability for illegal calling, Mr. Sapan decided to play along to determine who this really was.

42. After Mr. Sapan played along answering a few basic questions like whether he owned a home and had a mortgage, "Mark with American Financial"

brought the final sales agent on the line who self-identified as "Derek" with "E Mortgage in Orange County".

43.     The call had a technical difficulty and was dropped, but at no point did Mr. Sapan give consent to this already illegal call nor any future calls.

44.     Mr. Sapan pleads on information and belief that "American Financial" is a false and faked name, and it is either a name being used by E Mortgage directly, or alternatively is a fake name used by an agent hired by E Mortgage to make illegal telemarketing calls at the direction and control of E Mortgage.

45.     Mr. Sapan pleads on information and belief that "Mark" whom he spoke with on August 26, 2021 is an employee directly for E Mortgage, or in the alternative is an employee of agent of E Mortgage making illegal telemarketing calls at the direction and control of E Mortgage.

46.     Mr. Sapan pleads on information and belief that to the extent E Mortgage relies on any agent or other entity to make telemarketing calls on its behalf, E Mortgage has direct knowledge that such calls are being made to residential numbers on the Do Not Call Registry without consent.

47.     Alternatively, Mr. Sapan pleads on information and belief that to the extent E Mortgage relies on any agent or other entity to make telemarketing calls on its behalf, E Mortgage hired that agent to interact with the public on E Mortgage's behalf and therefore gave implied authority to represent E Mortgage and call residential numbers on the Do Not Call Registry without consent.

48.     Alternatively, Mr. Sapan pleads on information and belief that E Mortgage ratified the making telemarketing calls on its behalf by its agents, including "Mark", by knowing of the illegal conduct and failing to repudiate the conduct.

49.     Mr. Sapan alleges that since December 29, 2020 to present E Mortgage may have made more violative calls to Mr. Sapan's residential line that he was unable to log or identify at the time and expressly includes claims for them

Complaint

herein even though the specifics of the dates and times are unknown at this time without the aid of discovery.

## FACTUAL DETAILS RE NAMED PLAINTIFF STEVE WATERBURY

50.   Defendants made four (4) pre-recorded calls and twenty-seven (23) live calls to Mr. Waterbury's home phone number (858-569-0125) wherein they tried to pitch their financial services on the following dates and times and using the following Caller ID ("CID") numbers and Caller ID name ("CNAM") and a group number 1, 2 or 3 for how they were linked to E-Mortgage (see below):

- 4/19/21 CID 408-418-9818, CNAM [none] Group 1 (Pre-Recorded)
- 6/1/21   CID 805-259-1815, CNAM [none] Group 1 (Pre-Recorded)
- 6/17/21 CID 562-379-4026 CNAM [none] Group 1 (Pre-Recorded)
- 7/12/21 858-358-3475CNAM [none] Group 1 (Pre-Recorded)
- 1/24/22 CID 970-296-9430, CNAM ("Potential Spam") Group 2
- 4/6/2022 CID 858-746-0000, CNAM ("Hemsley Anthony") Group 3
- 4/8/2022 CID 858-6359181, CNAM [none] Group 3
- 4/11/2022 CID 858-566-1109, CNAM [none] Group 3
- 4/13/2022 CID 858-746-4000, CNAM ("Hemsley Anthony") Group 3
- 4/13/2022 CID 858-569-1950, CNAM ("Hemsley Anthony") Group 3
- 4/15/2022 CID 858-746-4000, CNAM ("Hemsley Anthony") Group 3
- 4/18/22 CID 970-296-9430, CNAM ("Potential Spam") Group 2
- 4/26/2022 CID 858-567-5070, CNAM ("Hemsley Anthony") Group 3
- 4/20/22 CID 951-833-8971, CNAM ("Potential Spam") Group 2
- 7/6/22 1226pm, CID 310-699-6676, CNAM ("Potential Spam") Group 2
- 7/6/22 333pm, CID 413-389-1385, CNAM ("Potential Spam") Group 2
- 7/8/22 937am, CID 310-596-0221, CNAM ("Potential Spam") Group 2
- 7/8/22 1229pm, CID 3107049044, CNAM ("Potential Spam") Group 2
- 7/13/22 CID 341-234-8028, CNAM ("Potential Spam") Group 2

Complaint

- 7/25/22 CID 341-234-8028, CNAM ("Lavenant Tracie") Group 2
- 8/17/2022 CID 858-565-9288, CNAM [none] Group 2
- 8/18/2022 CID 3938-356-2876, CNAM ("Potential Spam") Group 2
- 8/20/2022 1135am, CID 858-566-4079, CNAM [none] Group 2
- 8/20/2022 128pm, CID 858-566-4079, CNAM [none] Group 2
- 9/2/2022 CID 858-567-0770, CNAM ("Potential Spam") Group 3
- 9/6/2022 CID 858-569-7296 CNAM [none] Group 2
- 9/9/2022 CID 858-566-3329 CNAM ("Potential Spam") Group 3

51.     Mr. Waterbury made a log of all the calls he received from E Mortgage which is attached hereto as Exhibit 2 and incorporated herein as if set forth verbatim.

52.      Mr. Waterbury's call log entries were made during or shortly after receiving the calls and includes the date and time of the call, the Caller ID information, and his notes as to what transpired during the call.

53.     Mr. Waterbury's residential line has been tariffed and used as a residential line since he was assigned it by the phone company.

54.     Mr. Waterbury's residential line has been continuously registered on the National "Do-Not-Call" Registry from at least 2003 to the present.

55.     Mr. Waterbury never gave any E Mortgage or any other person, agent, employee or entity associated with E Mortgage express written permission to call him, nor does he have an established business relationship nor personal relationship with E Mortgage or any other person, agent, employee or entity associated with E Mortgage.

56.     As shown in the exhibits, representatives of E Mortgage regularly stated their corporate affiliation with E Mortgage in the calls Mr. Waterbury answered.

57.     To the extent that there are other company names used by some calling agents before connecting the call with a direct E Mortgage representative, Mr. Waterbury alleges that these people are agents of E Mortgage.

58.     In some case Mr. Waterbury was not connected to a E Mortgage representative during the call, however, in all such calls he can link the call to E Mortgage because the calls used business names, person's names or numbers that link back to E Mortgage.

<u>Group 1 Calls</u>

59.     For the calls from April 19, 2021 until July 12, 2021 each of the calls initially used pre-recorded messages offering mortgage services and then just gave a call back number and a name associated with that number in the message if the victim was interested.

60.     The calls on April 19, 2021 and June 1, 2021 used the call back number 714-987-2909 and/or the name "Mike Taylor" in the message, while the other Group 1 calls used the call back number 741-987-1007 and the name "Ken Davis".

61.     Mr. Waterbury has an internet phone with a different number that is in no way associated with his primary residential number that he can use in situations like this where a callback is the only way to identify the caller to ensure there is no hint of permission or consent as to calls to his primary residential number.

62.     On June 2, 2021, using the different phone number, Mr. Waterbury called back the 714-987-2909 and spoke to a representative.

63.     Upon request, Mr. Waterbury gave the representative an email address so Mr. Waterbury could determine the real party making the calls from the email, as shown in Mr. Waterbury's extended notes at Exhibit 3.

64.     Mr. Waterbury also called back each of the CID numbers for the calls in Group 1 and heard the same voice message greeting in each, "You've reached

the Financial Mortgage Department.  Please leave a detailed message and we'll return your call as soon as possible.  Thanks, and have a blessed day."

65.     Mr. Waterbury has transcripts of the pre-recorded messages and extended notes on his calls back as shown in Exhibit 4.

66.     Mr. Waterbury then received an email at the email address he gave during the June 2, 2021 call from a "David Gramse" that contained the logo of E Mortgage in the email evidenced in Exhibit 5.

67.     Since all four calls in Group 1 are linked with the same voice message greeting, and the David Gramse email links to the return call from the "Mike Taylor" messages, it is clear that E Mortgage is responsible for these calls.

<u>Group 2 Calls</u>

68.     For the calls for the period of January 24, 2022 through September 9, 2022 that are in Group 2, every call was answered by Mr. Waterbury, and in every call he was told that the calls came from "Nationwide Mortgage".

69.     On the July 25, 2022 call, Mr. Waterbury was initially told the call was from "Nationwide Mortgage", however after staying on the call he was then transferred to a person from E Mortgage directly and told he would get a follow up call, to which he provided a different number as evidenced in his extended notes at Exhibit 6.

70.     Mr. Waterbury received a follow up call later that day from a "Aaron Coleman" who stated he was from directly E Mortgage.

71.     Additionally, Mr. Waterbury provided an email address to the person he talked to on the July 25, 2022 call, and received a responsive email from a "David Hwang" with the logo of E Mortgage as evidenced in Exhibit 7.

72.     As all of the calls in Group 2 use the same "Nationwide Mortgage" in the initiating call and the July 25, 2022 call and corresponding email link E

Mortgage to that call, it is clear that E Mortgage is responsible for all the Group 2 calls.

<u>Group 3 Calls</u>

73.    For all of the calls for the period of January 24, 2022 through September 9, 2022 that are in Group 3, every call was answered by Mr. Waterbury, and in every call he was told that the calls came from "Nationwide Financial".

74.    On the September 9, 2022 call Mr. Waterbury was initially told the call was from "Nationwide Financial", however after staying on the call he was then transferred to a person from E Mortgage named "Omaro Ayloush" who told Mr. Waterbury that he was with E Mortgage as evidenced in his extended call notes at Exhibit 8.

75.    Mr. Waterbury visited E Mortgage's website and found that "Omaro Ayloush" is listed as an loan officer of E Mortgage as evidenced in Exhibit 9.

76.    As all of the calls in Group 3 use the same "Nationwide Financial" in the initiating call and the September 9, 2022 call link E Mortgage to that call, it is clear that E Mortgage is responsible for all the Group 3.

77.    Mr. Waterbury pleads on information and belief that ""Nationwide Mortgage" and/or "Nationwide Financial" is a false and faked name, and it is either a name being used by E Mortgage directly, or alternatively is a fake name used by an agent hired by E Mortgage to make illegal telemarketing calls at the direction and control of E Mortgage.

78.    Mr. Waterbury pleads on information and belief that all persons whom he spoke with on any of the alleged calls, including "David Hwang", "Omaro Ayloush", "Aaron Coleman" and/or "David Gramse" is an employee directly for E Mortgage, or in the alternative is an employee of agent of E Mortgage making illegal telemarketing calls at the direction and control of E Mortgage.

79.     Mr. Waterbury pleads on information and belief that to the extent E Mortgage relies on any agent or other entity to make telemarketing calls on its behalf, E Mortgage has direct knowledge that such calls are being made to residential numbers on the Do Not Call Registry without consent.

80.     Alternatively, Mr. Waterbury pleads on information and belief that to the extent E Mortgage relies on any agent or other entity to make telemarketing calls on its behalf, E Mortgage hired that agent to interact with the public on E Mortgage's behalf and therefore gave implied authority to represent E Mortgage and call residential numbers on the Do Not Call Registry without consent.

81.     Alternatively, Mr. Waterbury pleads on information and belief that E Mortgage ratified the making telemarketing calls on its behalf by its agents by knowing of the illegal conduct and failing to repudiate the conduct.

82.     Mr. Waterbury alleges that from December 29, 2020 to the present, E Mortgage may have made more violative calls to Mr. Waterbury's residential line that he was unable to log or identify at the time, and expressly includes claims for them herein even though the specifics of the dates and times are unknown at this time without the aid of discovery.

## LIABILITY OF E MORTGAGE CAPITAL, INC.

83.     Representatives of E Mortgage self-identified their corporate affiliation in many of the calls detailed above and in the exhibits.

84.     As detailed above, for all calls which went unanswered, had technical difficulties before an E Mortgage representative came on the line, or required a call back to determine who the caller actually was, Plaintiffs linked those calls to once wherein an E Mortgage representative self-identified via the CID number, use of the same or similar sales scripts, or use of the same fictitious entity name at the outset of the call in an unsuccessful attempt to evade detection.

Complaint

85.     Plaintiff alleges on information and belief that E Mortgage ordered the violative calls to be made, knew the calls described above were being made and did nothing, or was willfully and recklessly ignorant of the fact his company was making the calls described above or contracting for them to be made.

## LIABILITY OF JOSEPH NAGIB SHALABY

86.     Defendant E Mortgage is a licensed mortgage brokerage by the California Department of Real Estate, license number 01704228.

87.     That license specifies Defendant Joseph Nagib Shalaby as the sole broker responsible for the acts of all agents and employees of E Mortgage.

88.     The responsibility and liability of the broker is codified by California law, Business and Professions Code §10159.2 titled, "Securing full compliance with provisions; Responsibility of officer" and stating in pertinent part, "the officer designated by a corporate broker licensee pursuant to Section 10211 shall be responsible for the supervision and control of the activities conducted on behalf of the corporation by its officers and employees as necessary to secure full compliance with the provisions of this division, including the supervision of salespersons licensed to the corporation in the performance of acts for which a real estate license is required."

89.     Attempting to sell mortgage refinancing consultation services over the phone is an act for which a real estate license is required,

90.     Defendant Joseph Nagib Shalaby is the sole officer listed for E Mortgage in its California Department of Real Estate License.

91.     Defendant Joseph Nagib Shalaby is listed for E Mortgage in its filing documents with the California Secretary of State as Chief Executive Officer and Corporate Secretary.  (Cal. SOS License C3785043, Statement of Information, February 9, 2022).

92.     Defendant Joseph Nagib Shalaby in his own words on his LinkedIn profile as it appeared on October 5, 2022 (and unchanged since at least February 14, 2020) states that he is the "Principal Broker" of E Mortgage, and the LinkedIn profile for E Mortgage lists no other officers.  (available at https://www.linkedin.com/in/joseph-shalaby-7611718).

93.     Plaintiff pleads on information and belief that no person other thasn Mr. Shalaby owns any of the 1,000 shares of stock in E Mortgage.

94.     Plaintiff alleges on information and belief that Defendant Joseph Nagib Shalaby is the only person at E Mortgage with the authority to make the calls to Plaintiff, order them to be made, or have the authority to contract a "lead agent" to make calls with apparent authority to act as E Mortgage or on its behalf.

95.     Plaintiff alleges on information and belief that Defendant Joseph Nagib Shalaby ordered the violative calls to be made, knew the calls described above were being made and did nothing, or was willfully and recklessly ignorant of the fact his company was making the calls described above or contracting for them to be made.

## FINAL LIABILITY ALLEGATIONS

96.     Plaintiff pleads on information and belief that to the extent E Mortgage uses any agents to make calls, E Mortgage ordered their agent to make the illegal telemarketing calls to numbers on the National "Do-Not-Call" Registry for its benefit.

97.      Plaintiff pleads on information and belief that to the extent E Mortgage uses any agents to make calls, E Mortgage ordered their agent to make the illegal telemarketing calls using a prerecorded voice to residential phone lines for its benefit.

98.     Plaintiff pleads on information and belief that to the extent E Mortgage uses any agents to make calls, E Mortgage knew or reasonably should

Complaint

have known (implied agency), that its agents were was making the illegal telemarketing calls to numbers on the National "Do-Not-Call" Registry and using prerecorded voice calls to residential numbers.

99.   Plaintiff pleads on information and belief that to the extent E Mortgage uses any agents to make calls, E Mortgage explicitly condoned the actions of such agents in making the illegal telemarketing calls to numbers on the National "Do-Not-Call" Registry and using prerecorded voice calls to residential numbers for its benefit by condoning their actions afterwards.

100.   Plaintiff pleads on information and belief that to the extent E Mortgage uses any agents to make calls, E Mortgage explicitly hired by such agent in order to make the illegal telemarketing calls to numbers on the National "Do-Not-Call" Registry and to use prerecorded voice calls to residential numbers for the benefit of E Mortgage.

## ACTUAL HARM & WILFUL AND KNOWING CONDUCT

101.   The Telephone Consumer Protection Act of 1991 ("TCPA") was passed in order to regulate telemarketing and requires that no telemarketer may call any number registered on the National "Do-Not-Call" Registry without prior express consent or a prior established business relationship.

102.    Defendants have intentionally violated the TCPA in a so-far successful attempt to sell financial and mortgage related services.

103.   Plaintiff has been harmed by the junk calls complained of herein by the direct waste of his time during the call itself, the indirect waste of time in having to break from other important tasks and spend time catching up after the junk call, the waste of telephone service which he and not Defendants must pay for, the costs of having to pursue legal remedies, and in the aggravation and consequent health effects of stress these illegal intrusions have caused.

Complaint

104.   Plaintiff has been harmed by the calls he did not answer by the direct waste of his time in having to check the Caller ID while he was busy in meetings or with other projects before declining the call, the indirect waste of time in having to break from other important tasks and spend time catching up after these junk calls, the waste of telephone service which he and not Defendants must pay for, the costs of having to pursue legal remedies, and in the aggravation and consequent health effects of stress these illegal intrusions have caused.

105.   During each of Defendants' calls, Plaintiff wanted to make or receive a call to/from someone else for his own personal or business reasons and was blocked from doing so by the line being tied up by Defendants.

106.   As a proximate result of these intrusions, Plaintiff suffered and invasion of his privacy because the call should never have been transmitted to him and rang his private phone at his private residence.

107.   Plaintiff alleges on information and belief that Defendants made the calls described above intentionally, in the sense that the number called was the one they meant to call in pitching their services.

108.   Plaintiff alleges on information and belief that Defendants made the calls described above knowing that they were made in contravention of the TCPA and other telemarketing laws and regulations.

## CLASS ACTION ALLEGATIONS

109.   **Description of the Class**:  Plaintiffs bring this class action against Defendant for injunctive relief and damages and all other relief available at law and in equity on behalf of themselves and members of the following class of persons:

Sub-class 1:

*All persons and entities located within the United States of America who claim to be able to provide a phone bill or statement showing they were a*

---

Complaint

*residential telephone subscriber and that their number was registered on the National Do-Not-Call Registry to whose residential telephone Defendants and/or their agents transmitted two or more telemarketing calls in one calendar year without prior express written consent from the called party or an 'existing business relationship' at any time from December 29, 2020 to the present, including up to and through trial, and*

Sub-class 2:

*All persons and entities located within the United States of America who claim to be able to provide a phone bill or statement showing they had had a phone number subscribed to a residential tariff and who claim Defendants and/or their agents transmitted a call to sell financial services using a prerecorded voice to said number without prior express written consent from the called party at any time from December 29, 2020 to the present, including up to and through trial; and,*

110.   Excluded from the Class are governmental entities, Defendant, any entity in which Defendant have a controlling interest, and Defendant' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns.  Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

111.   Plaintiffs reserve the right to modify the Class description and the Class period based on the results of discovery.

112.   **Numerosity**:  The proposed Class is so numerous that individual joinder of all its members is impracticable.  Due to the nature of the evidence of the number of calls made by Defendant, Plaintiffs believe that the total number of Class members is at least in the tens of thousands and members and the members

are geographically dispersed across California and the United States.  While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery, namely through Defendant' call records.  The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

113.  **Common Questions of Law and Fact Predominate**:  There are many questions of law and fact common to the representative Plaintiff and the Class, and those questions substantially predominate over any questions that may affect individual Class members.  Common questions of fact and law include, but are not limited to, the following:

a.  Whether Defendant transmitted two or more sales calls in any one calendar year to numbers on the National "Do-Not-Call" Registry.

b.  Whether Defendant transmitted calls using a prerecorded artificial voice to residential phone lines.

b.  Whether Defendant transmitted these calls without prior express consent from the owners of those lines or a business relationship with them established before the calls were made.

c.  Whether the transmission of these calls was done willfully or knowingly by Defendant.

d.  Whether agency relationships giving rise to TCPA liability exist amongst and between Defendants and their agents.

114.  **Typicality**:  Plaintiffs' claims are typical of the claims of the members of the Class.  Plaintiffs and all members of the Class have been similarly affected by Defendant' common course of conduct since Defendant' have repeatedly called the Class to sell their financial products.

115.  **Adequacy of Representation**:  Plaintiffs will fairly and adequately represent and protect the interests of the Class.  Plaintiffs have retained counsel

Complaint

with experience in handling complex litigation who has been previously certified as class counsel.  Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so.  Neither Plaintiffs nor their counsel have any interests adverse to those of the Class.

116.  **Superiority of a Class Action**:  Plaintiffs and the members of the Class suffered, and will continue to suffer, intangible and tangible harm as a result of Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the class is impractical.  Even if individual class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendants' common course of conduct.  The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all class members' claims in a single forum.  The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the class member.  Furthermore, for many, if not most, a class action is the only feasible mechanism that allows therein an opportunity for legal redress and justice

117.  Adjudication of individual class member's claims with respect to Defendant would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication and could substantially impair or impede the ability of other class members to protect their interests.

/ / /

/ / /

Complaint

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION: TCPA VIOLATION
### CALL TO NUMBER ON THE NATIONAL "DO-NOT-CALL" REGISTRY
**(On Behalf of the Plaintiff Class)**

118.   Plaintiffs reallege all paragraphs above and incorporates them herein by reference.

119.   Plaintiffs are bringing this action pursuant to the provisions of the Telephone Consumer Protection Act of 1991 (47 U.S.C. §227 and 47 C.F.R. §64.1200 – "TCPA").

120.   Subdivision (c) (2) of Section 64.1200 of Title 47 of the Code of Federal Regulations makes it unlawful for any person to "initiate any telephone solicitation" to "A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations."

121.   At all times relevant to this complaint, Plaintiffs had registered their respective residential telephone number on the national do-not-call registry maintained by the U.S. Government.

122.   Defendants have called Plaintiffs' residential telephone lines for solicitation purposes at least twice during a calendar year during the statutory period of the last 4 years, pursuant to 28 U.S.C. § 1658.  These calls are the only calls known to Plaintiffs at this time and Plaintiffs state on information and belief, without yet having the aid of full discovery, that it is quite likely that Defendant has made many more violative calls to Plaintiffs' residential telephone lines. These calls were not made in error, nor did Defendant have express permission from Plaintiffs to call, nor did Defendant have a personal relationship with Plaintiffs.  37 C.F.R. § 64.1200 (c) (i), (ii), & (iii).

123.   Subdivision (c)(5) of section 227 of title 47 of the United States Code permits a private right of action in state court for violations the National "Do-Not-Call" Registry rules promulgated thereunder.  Plaintiffs may obtain relief in the form of injunctive relief or Plaintiffs may recover up to $500.00 for each violation, or both.  If the court finds that Defendants' violations were willful or knowing, it may, in its discretion, award up to three times that amount.

## SECOND CAUSE OF ACTION: TCPA VIOLATION
## PRERECORDED TELESOLICITATION TO A RESIDENTIAL NUMBER
### (On Behalf of the Plaintiff Class)

124.   Plaintiffs realleges all paragraphs above and incorporates them herein by reference.

125.   Plaintiffs are bringing this action pursuant to the provisions of the Telephone Consumer Protection Act of 1991 (47 U.S.C. §227 and 47 C.F.R. §64.1200 – "TCPA").

126.   Subdivision (b) (1) (B) of Section 227 of Title 47 of the United States Code makes it unlawful for any person to "initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order of the Commission under paragraph (2) (B);"

127.   Defendants have called Plaintiffs residential telephone lines, using an artificial or prerecorded voice to deliver a message, without Plaintiffs' express permission during the statutory period of the last 4 years, pursuant to 28 U.S.C. § 1658.  These calls are the only calls known to Plaintiffs at this time and Plaintiffs state on information and belief, without yet having the aid of full discovery, that it is quite likely that Defendant has made many more violative calls to Plaintiffs'

residential telephone line.  These calls were not made for any emergency purpose, nor were these calls exempt under subdivisions (a) and/or (c) of section 64.1200 of title 47 of the Code of Federal Regulations.

128.    Subdivision (b)(3) of section 227 of title 47 of the United States Code permits a private right of action in state court for violations of 47 U.S.C. §227 (b)(1) (B). Plaintiffs may obtain relief in the form of injunctive relief, or Plaintiffs may recover $500.00 for each violation, or both.  If the court finds that Defendants' violations were willful or knowing, it may, in its discretion, award up to three times that amount.

WHEREFORE Plaintiffs pray for judgment against Defendant, and each of them, as follows:

On the FIRST CAUSE OF ACTION:

1.    For an award of $500.00 for each violation of 47 U.S.C. § 227(c)(2);

2.    For an award of $500.00 for each violation of 47 U.S.C. § 227(b)(1)(B)

3.    For an award of $1,500.00 for each such violation found to have been willful;

On ALL CAUSES OF ACTION:

4.    For attorney's fees pursuant to all applicable federal and state statutes;

5.    For costs of suit herein incurred; and

6.    For such further relief as the Court deems proper.

DATED: October 6, 2022                    **PRATO & REICHMAN, APC**


                                          /s/Christopher J. Reichman, Esq.
                                          By: Christopher J. Reichman, Esq.
                                          **Prato & Reichman, APC**
                                          Attorneys for Plaintiff,
                                          Paul Sapan

Complaint